IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Greenbelt Division

JEFFREY VANCE, et al.,　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　 )
　　　　　　Plaintiffs,　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　 )
v.　　　　　　　　　　　　　　　　　　 )　　　Civil Case No. 8:11-cv-03210 (RWT)
　　　　　　　　　　　　　　　　　　　 )
CHF INTERNATIONAL　, et al.,　　　　　 )
　　　　　　　　　　　　　　　　　　　 )
　　　　　　Defendants.　　　　　　　　 )
_____)

**PLAINTIFFS' RESPONSE TO**
**DEFENDANT CHF'S MOTION TO DISMISS**

Plaintiffs, the wife, five children, and mother of decedent, Stephen Vance, hereby

oppose Defendant CHF International's ("CHF") Motion to Dismiss the Complaint.  CHF

argues that the Defense Base Act ("DBA"), 42 U.S.C. § 1651, *et seq.*, provides Plaintiffs their

exclusive remedy for Steven Vance's death.  The DBA is a World War II-vintage federal

workers compensation scheme designed to protect civilian defense contractors.  As explained

within, CHF's Motion fails for several reasons.

First, the DBA applies to persons engaged in "public work" only as that term is

defined in the statute.  "Public work" has no application to humanitarian aid workers like Mr.

Vance.

Second, CHF asks the Court to rely upon boilerplate language from a third-party

agreement, for which there has been no discovery to ascertain its meaning, to dismiss the

case. Specifically, CHF argues that the Cooperative Agreement with USAID was "funded

pursuant to" the Foreign Assistance Act ("FAA"), thus triggering the DBA.  The law,

however, requires more.  For DBA exclusivity to attach, it must be shown that the



KLORES
PERRY
MITCHELL p.c.

1735 20ᵀᴴ STREET, N.W.
WASHINGTON, D.C. 20009
(202) 628-8100
FAX (202) 628-1240

WWW.KLORES.COM

employment in question was *performed under* the FAA.  The single phrase upon which CHF relies falls short of that standard.  In short, CHF provides insufficient evidence to support its claim that Mr. Vance's work was even financed by, let alone performed under, the FAA.[1]

Finally, Plaintiffs have sufficiently pled their claim for intentional infliction of emotional distress, and that count should be sustained.  As further explained herein, Defendant's Motion to Dismiss Plaintiffs' Complaint should be denied.

## BACKGROUND

### A.  The Avoidable Assassination of CHF Employee Stephen Vance

Defendant CHF is a development organization based in Silver Spring, Maryland funded by government grants and private donations that works in developing and conflict-stricken countries around the world.  Compl. ¶¶ 7, 11-12.  As of 2010, CHF had over $100 million in net assets.  Compl. ¶ 12.  Stephen Vance, a lifelong humanitarian aid worker employed by CHF, was tasked in 2008 to implement a job creation and workforce development program in the Northwest tribal areas of Pakistan.  Compl. ¶¶ 10, 13, 16.  The project was funded, at least in part, by the United States Agency for International Development ("USAID").  Compl. ¶ 13.  CHF knew, or should have known, that the area to which Mr. Vance was assigned was extremely dangerous, as it was beset by assassinations and kidnappings, particularly against Westerners.  Compl. ¶¶ 16, 18-23.  Despite the deteriorating security situation, CHF failed to provide Mr. Vance with even the minimum protections it knew were reasonably required under the circumstances, including, for instance, an armored car, visibility shielding in the vehicle to prevent his identification as a Westerner,

KLORES
PERRY
MITCHELL p.c.
1735 20ᵀᴴ Street, N.W.
Washington, D.C. 20009
(202) 628-8100
Fax (202) 628-1240

www.Klores.com

---

[1] At best, CHF's argument presents the factual question of whether Mr. Vance's contract was "performed under" the FAA, which question can be answered only after the parties have conducted jurisdictional discovery.

and a driver trained to operate under the security threat presented in Northwest Pakistan. Compl. ¶¶ 14, 18, 21-22, 24-31. On November 12, 2008, Mr. Vance and his driver were assassinated as he was being driven to the office, a killing made possible by CHF's failure to employ these most basic security measures for his protection. Compl. ¶¶ 25-34. Basic security precautions by CHF would have prevented Mr. Vance's death. Indeed, a few months prior to his death, such measures prevented the death of an American not employed by CHF in a virtually identical assassination attempt. Compl. 19-20.

### B. The Defense Base Act

With the onset of World War II, the United States contracted to build military bases in various foreign lands, requiring the use of civilian employees by American contractors to work at those bases. *University of Rochester v. Hartman*, 618 F.2d 170, 172 (2d Cir. 1980). Originally enacted in August 1941, the DBA extended the coverage of the Longshoremen's and Harbor Workers' Compensation Act—a federal domestic workers' compensation scheme—to include those overseas military contract workers. *Id.* The legislation was "designed to extend workmen's compensation benefits for the protection of employees outside of the United States who are working for Government contractors at the defense bases obtained from foreign countries, and upon lands and premises used for military and naval purposes located in the Territories and at other places, in cases of injury or death resulting from war hazards as defined in the measure, and in cases where such employees are detained by an enemy as prisoner, hostage, or otherwise, leaving dependents to be provided for." *Id.* (quoting Hearings Before Subcommittee No. 1 Of The Committee On The Judiciary, House of Representatives on S. 2412, 77th Cong., 2d Sess. 62 (1942)).

KLORES
PERRY
MITCHELL p.c.
1735 20ᵀᴴ Street, N.W.
Washington, D.C. 20009
(202) 628-8100
Fax (202) 628-1240

www.Klores.com

3

As World War II and later, the Cold War, progressed, Congress amended the DBA to reflect America's growing involvement in international security matters; "the legislative history of the DBA reveals it has grown from a limited response to the overseas military demands of World War II to an Act covering all overseas United States government-related construction projects, national defense activities, and service contracts thereto." *Hartman*, 618 F.2d at 173. To the extent the DBA applies to the contract under which a person is employed, it provides the exclusive remedy for injury or death related to his employment. *See, e.g., Fisher v. Halliburton*, 390 F.Supp.2d 610, 613 (S.D.Tex. 2005).

### C. The Posture of the Case

While it is known that Mr. Vance was employed by CHF as a result of a contract between USAID and CHF, the extent, relationship, and interplay between that agreement and Mr. Vance's employment are not known. No discovery has yet taken place in this case. Hence, Plaintiffs are unable to ascertain the nature, extent, authority, and funding of that contract (or contracts), which CHF's Motion refers to as the "Cooperative Agreement." More importantly, in its haste to assert that Mr. Vance's work pursuant to the Cooperative Agreement was covered by the DBA, CHF has not provided the afore-described information to Plaintiffs or the Court.[2]

### ARGUMENT

I.   **CHF HAS NOT DEMONSTRATED THAT THE DEFENSE BASE ACT APPLIES TO PLAINTIFFS' CLAIMS.**



CHF's Motion to Dismiss fails to demonstrate the DBA's application here. First, contrary to CHF's argument, Mr. Vance's work did not fall within the DBA's plain language defining a "public work," and thus, the DBA does not apply to him on that basis. Second,

---

[2] Plaintiffs requested substantive information on these issues from CHF pre-suit. None was provided.

KLORES
PERRY
MITCHELL P.C.
1735 20TH STREET, N.W.
WASHINGTON, D.C. 20009
(202) 628-8100
FAX (202) 628-1240

WWW.KLORES.COM

CHF has not shown that Mr. Vance's work was performed under the Foreign Assistance Act

("FAA"), and thus its argument for the application of DBA exclusivity fails.  At a minimum,

CHF's Motion is unripe for decision until factual discovery has been conducted to ascertain

whether the USAID contract under which Mr. Vance was employed was "performed under"

the FAA.

**A.  The Defense Base Act Does Not Apply to Mr. Vance Under 42 U.S.C. § 1651(a)(4) Because He was Not Employed Under a Contract Related to Public Work as Defined Under 42 U.S.C. § 1651(b)(1).**

As CHF correctly notes, the DBA's exclusive remedy applies,

> under a contract entered into with the United States or any
> executive department, independent establishment, or agency
> thereof (including any corporate instrumentality of the United
> States), or any subcontract, or subordinate contract with respect
> to such contract, where such contract is to be performed outside
> the continental United States and at places not within the areas
> described in subparagraphs (1), (2), and (3) of this subdivision,
> for the purpose of engaging in *public work*, . . . []

42 U.S.C. § 1651(a)(4) (emphasis added).  CHF fails to mention, however, that the statute

itself defines what constitutes a "public work," and that the definition precludes the very

argument made in the Motion:

> (b) Definitions. As used in this section—
>
> (1) the term "public work" means any fixed improvement or
> any project, whether or not fixed, involving construction,
> alteration, removal or repair for the public use of the United
> States or its allies, including but not limited to projects or
> operations under service contracts and projects in connection
> with the national defense or with war activities, dredging,
> harbor improvements, dams, roadways, and housing, as well as
> preparatory and ancillary work in connection therewith at the
> site or on the project[.]

42 U.S.C. § 1651(b)(1).



KLORES
PERRY
MITCHELL P.C.

1735 20TH STREET, N.W.
WASHINGTON, D.C. 20009
(202) 628-8100
FAX (202) 628-1240

WWW.KLORES.COM

As even CHF concedes, the contract under which Mr. Vance worked had as its "three main components and project areas [ ]: (1) creating jobs, increasing incomes, and teaching employable skills, with a focus on unemployed youth; (2) revitalizing community infrastructure and essential services; and (3) supporting established businesses and developing new sustainable businesses." CHF Mot. at 15, citing Cooperative Agreement at A-4. None of this remotely falls within the statutory meaning of "public work" under § 1651(b)(1).

"The *sine qua non* of the [DBA's public work prong's] applicability has always been a military or a United States government construction connection." *Hartman*, 618 F.2d at 173-74 (2d Cir. 1980) (denying DBA compensation claim for scientist taking soil samples in Antarctica under National Science Foundation grants). In *Hartman*, the Second Circuit emphatically rejected the very argument propounded by CHF here, namely, that a "public work" under the DBA is any activity, no matter how amorphous or attenuated, that might have an effect on national defense or infrastructure. The *Hartman* court construed § 1651(b)(1)'s definition of "public work" to mean exactly what its plain meaning suggests:

> [Section] 1651(a)(4) applies only when a benefit claim stems
> from a contract with the United States to perform "public work"
> overseas, "public work" constituting a construction project,
> work connected with national defense, or employment under a
> service contract supporting either activity. Therefore, to be
> covered, a service contract must be connected either with a
> construction project or with a national defense activity. Service
> contracts lacking a construction or national defense nexus
> simply fall beyond the boundaries of the DBA.

618 F.2d at 173.

Mr. Vance was not working on a contract to conduct war activities, dredge, improve harbors, or to build dams, roadways, or housing, or on anything connected to those activities. Unlike an individual teaching Navy personnel aboard Navy ships, he was not engaged in an

KLORES
PERRY
MITCHELL P.C.
1735 20TH STREET, N.W.
WASHINGTON, D.C. 20009
(202) 628-8100
FAX (202) 628-1240

WWW.KLORES.COM

activity connected to national defense. *Contra* CHF Mot. at 14-15, citing *Casey v. Chapman College*, 23 BRBS 7 (1989). By CHF's admission, Mr. Vance was engaged in humanitarian economic development work, which is not remotely within the ambit of § 1651(b)(1). Where the statutory meaning is plain and will not cause an irrational or absurd result, courts are not free to rewrite legislative language to obtain a desired result. *United States v. Shirah*, 253 F.2d 798, 800 (4th Cir. 1958). The Court should decline CHF's invitation to rewrite the DBA here. As written, the DBA has no applicability to Mr. Vance under the public work prong of the statute, and CHF's argument is unsustainable.

> **B. CHF has Not Shown that Mr. Vance's Contract was Performed Under the Foreign Assistance Act, Which Determines Whether the Defense Base Act Applies to His Claims.**

The DBA's exclusivity applies,

> [u]nder a contract approved and financed by the United States or any executive department, independent establishment, or agency thereof (including any corporate instrumentality of the United States), or any subcontract or subordinate contract with respect to such contract, where such contract is to be *performed* outside the continental United States, *under* the Mutual Security Act of 1954, as amended (other than title II of chapter II thereof unless the Secretary of Labor, upon the recommendation of the head of any department or other agency of the United States, determines a contract financed under a successor provision of any successor Act should be covered by this section), . . .[ ]

42 U.S.C. § 1651(a)(5) (emphasis added). The "Mutual Security Act of 1954" cited in the statute was repealed and superseded by the "Foreign Assistance Act of 1961." *Overseas African Const. Corp. v. McMullen*, 500 F.2d 1291, 1295 n.10 (2d Cir. 1974).

**KLORES PERRY MITCHELL** P.C.
1735 20TH STREET, N.W.
WASHINGTON, D.C. 20009
(202) 628-8100
FAX (202) 628-1240

WWW.KLORES.COM

There being no question that the contract here was performed outside the continental United States, the relevant inquiry is whether the Cooperative Agreement[3] between USAID and CHF was "performed under" the FAA. While CHF avers the Cooperative Agreement was *funded by* the FAA, *see* CHF Mot at 11-12, the statute requires more. DBA's exclusivity attaches only where the contract in question was *performed under* the FAA. *See* 42 U.S.C. § 1651(a)(5). Although the statute itself does not define what it means for a contract to be "performed under" the FAA, Congress chose to use the express term "financed by" in the first phrase of § 1651(a)(5), while using the entirely distinct terms "performed" and "under" as the condition determining when the DBA applies to contracts executed under the FAA [formerly the Mutual Security Act]. CHF provides no support for its assertion that the phrases are interchangeable. Its equating of "funded by" to "performed under" is not facially supported by the language and structure that Congress chose in formulating § 1651(a)(5). As the dearth of citations in CHF's brief suggests, the meaning of the phrase "performed under" is not readily apparent as either a factual or a legal matter. Indeed, this issue appears to be one of first impression.

Importantly, CHF has submitted no evidence on even the issue of the statutory funding source of the Cooperative Agreement. Rather, it builds its entire argument that the Cooperative Agreement was "funded by" the FAA on a perfunctory statement from a USAID letter awarding a contract to CHF "[p]ursuant to the authority contained in" the FAA. *See* CHF Mot at 11-12.[4] This language, however, falls far short of demonstrating that funding for

KLORES
PERRY
MITCHELL p.c.
1735 20ᵀᴴ Street, N.W.
Washington, D.C. 20009
(202) 628-8100
Fax (202) 628-1240

www.Klores.com

---

[3] Plaintiffs operate here on the assumption that the Cooperative Agreement attached by CHF to the Motion is controlling; without having had the opportunity for discovery, Plaintiffs have no way of knowing which contract(s) actually controlled Mr. Vance's employment by CHF.

[4] It bears noting that the terms "performed under" and "funded by" are not synonymous. The statutory authority for government-funded projects is often distinct from its funding source. Moreover,

the contract pursuant to which Mr. Vance was employed was derived from the FAA. More importantly, this language does not show, *and CHF does not directly assert*, that the Cooperative Agreement was to be *performed under* the FAA. As CHF has not demonstrated the statutory grant of authority for the work to be performed under the Cooperative Agreement, its Motion must be denied.[5]

Hence, in its current posture, this case presents, at best, a mixed question of law and fact for which jurisdictional discovery is required. The issues presented appear to be: (1) what is the factual relationship between the FAA and the Cooperative Agreement at issue here; and (2) what does it mean for a contract to be "performed under" the FAA? Plaintiffs bear the burden of demonstrating the Court's jurisdiction by a preponderance of the evidence. Accordingly, Plaintiffs respectfully request 90 days in which to conduct jurisdictional discovery on those issues.

## II.    PLAINTIFFS' CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS IS SUFFICIENTLY PLED.

CHF accurately recites Maryland's pleading requirements for intentional infliction of emotional distress as being: (1) that the conduct was intentional or reckless; (2) the conduct was extreme and outrageous; (3) there was a causal connection between the wrongful conduct and the emotional distress; and (4) the emotional distress was severe. Count V of the Complaint plainly states these elements. CHF errs, however, in contesting whether the facts of this case meet that standard. There is no higher pleading standard for an intentional

KLORES
PERRY
MITCHELL p.c.
1735 20TH STREET, N.W.
WASHINGTON, D.C. 20009
(202) 628-8100
FAX (202) 628-1240

www.KLORES.com

government agencies frequently fund projects administered by other agencies under various statutory authorities.

[5]   CHF attempts to make much of the fact that Mr. Vance's widow "accepted" DBA benefits. Discovery will show that Mr. Vance's widow was never informed that by "accepting" such benefits, she might pre-empt her right to sue CHF. It could just as easily be argued that the unrepresented widow was induced by CHF to obtain the benefits so it could shield its liability.

9

infliction of emotional distress claim, and Plaintiffs' allegations meet the liberal pleading standard. At most, CHF's argument here is properly brought at summary judgment once the factual record has been developed.

Whether CHF's conduct in knowingly placing Mr. Vance in harm's way was so extreme and outrageous is a question of fact; so, too, is the question of the grief incurred by his family as a result of his death. Notwithstanding CHF's allegations of lack of specificity, it is difficult to imagine what further specificity it expects in the Complaint beyond the details the Plaintiffs have provided. *See Estate of Craft v. Hyatt Corp.*, 1997 U.S. App. LEXIS 16052 at *4-5 (4th Cir. June 30, 1997) (unpublished opinion) (holding dismissal of Maryland intentional infliction of emotional distress count improper where elements properly pled, and noting that the sufficiency of evidence is to be determined at summary judgment). Plaintiffs have described their intentional infliction of emotional distress claim with sufficient specificity, and CHF's dismissal motion should be denied.

## CONCLUSION

For the foregoing reasons, CHF's argument that the DBA operates to bar Plaintiffs' claims should be rejected, and its motion to dismiss their intentional infliction of emotional distress claim denied. To the extent that CHF has additional evidence bearing on the issue of the relationship between the contract under which Mr. Vance was employed and the FAA, resolution of CHF's argument that the DBA's exclusivity applies on that basis should be stayed until Plaintiffs have been able to conduct jurisdictional discovery and further briefing on this mixed question of law and fact.

KLORES
PERRY
MITCHELLP.C.
1735 20TH STREET, N.W.
WASHINGTON, D.C. 20009
(202) 628-8100
FAX (202) 628-1240

WWW.KLORES.COM

DATED:  January 9, 2012                Respectfully submitted,

KLORES PERRY MITCHELL, P.C.

By:___/s/_____
     Scott M. Perry (#14763)
     1735 20th Street, N. W.
     Washington, DC 20009
     T: (202) 628-8100
     F: (202) 628-1240
     smp@klores.com

     THE LEWIS FIRM PLLC
     Trey Mayfield (seeking *pro hac vice admission*)
     Michael Lewis (seeking *pro hac vice admission*)
     901 New York Ave., NW, Ste 550
     Washington, DC  20001
     T: (248) 766-9542
     F: (888) 630-6257
     trey.mayfield1988@gmail.com
     *Counsel for Plaintiffs*

KLORES
PERRY
MITCHELL, P.C.
1735 20TH STREET, N.W.
WASHINGTON, D.C. 20009
(202) 628-8100
FAX (202) 628-1240

WWW.KLORES.COM

## CERTIFICATE OF SERVICE

   I hereby certify that on this 9th day of January, 2012, I served a true and accurate copy of the foregoing, Plaintiff's Response to Defendant CHF's Motion to Dismiss, via the Courts Electronic Filing system, to:

      Tara M. Lee, Esquire
      Joseph C. Davis, Esquire
      DLA Piper, LLP
      11911 Freedom Drive, Suite 300
      Reston, VA 20190

                             /s/
                                Scott M. Perry

2001/oppn



KLORES
PERRY
MITCHELL P.C.

1735 20TH STREET, N.W.
WASHINGTON, D.C. 20009
(202) 628-8100
FAX (202) 628-1240

WWW.KLORES.COM