IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Greenbelt Division

JEFFREY VANCE, et al.,              )
                                    )
              Plaintiffs,           )
                                    )
v.                                  )          Civil Case No. 8:11-cv-03210 (RWT)
                                    )
CHF INTERNATIONAL, et al.,          )
                                    )
              Defendants.           )
_____ )

**PLAINTIFFS' RESPONSE TO
DEFENDANT UNITY RESOURCES GROUP PTE. LTD.'S
MOTION TO DISMISS THE COMPLAINT**

On September 12, 2008, Stephen Vance, an American citizen performing humanitarian

work in Pakistan while working for a Maryland company, was killed.  His death resulted from

inadequate security provided by Defendant Unity Resource Group Pte. Ltd. ("Unity"), which had

contracted with co-defendant CHF International ("CHF") to provide for Mr. Vance's safety.

Unity's Motion argues the Court should dismiss this case for lack of personal jurisdiction,

implying that Pakistan is the only proper forum for this suit.  The record, however, demonstrates

Unity's contacts with Maryland are sufficient to exercise specific personal jurisdiction over it

under both Maryland's long-arm statute, Md. Code Ann., Cts. & Jud. Proc. § 6-103, and the Due

Process Clause of the Fourteenth Amendment.

Unity can claim no injustice having to litigate in this Court.  The Plaintiffs' claims arise

solely from Unity's contacts with Maryland, as the Contract between Unity and CHF gave rise to

Unity's duties to the decedent.  The Firm Fixed Price Contract (the "Contract") between Unity

and CHF, which required Unity to help CHF implement "[s]tringent security measures" in



**KLORES
PERRY
MITCHELL**P.C.

1735 20TH STREET, N.W.
WASHINGTON, D.C. 20009
(202) 628-8100
FAX (202) 628-1240

WWW.KLORES.COM

Pakistan, had significant Maryland contacts.  *See* Unity's Memorandum of Law in Support of Motion to Dismiss the Complaint ("Memo"), Exhibit ("Ex.") 1, Declaration of Syed Mubashar Hasan Shah ("Shah Decl."), Ex. A, Firm Fixed Price Contract ("Contract") at 7.[1]  Unity asserts lack of personal jurisdiction here because it has no official presence in Maryland, and because it happened to execute the Contract in Pakistan.  Personal jurisdiction, however, does not require that all, or even most, of a defendant's contacts be with the chosen forum; the relevant question is only whether *minimum* contacts exist.  Here they surely do: Unity negotiated the contract with a Maryland company, amended the contract in Maryland, conducted its contractual responsibilities on behalf of a Maryland company, was paid from Maryland, and even agreed that the Contract would be governed by Maryland law.  This Court's exercise of personal jurisdiction over Unity is entirely consistent with both Maryland's long-arm statute and the Due Process Clause.

## FACTUAL BACKGROUND OF THE CONTRACT

### Unity Contracts To Provide Security To CHF Employees in Pakistan.

On April 1, 2008, Unity and CHF executed the Contract.  It obligated Unity to "[m]anage all security related contracts as part of the overall [Federally Administered Tribal Area Livelihood Development Program ("FATA LDP")] security program."  Memo, Ex. 1, Shah Decl., Ex. A, Contract at 8.  Unity alleges that Mr. Vance signed the Contract for CHF, that Mubasher [sic] Hasan signed for Unity,[2] and that the Contract was signed in Peshawar, Pakistan.  Memo, Ex. 1, Shah Decl., Ex. A, Contract at 5; Memo, Ex. 1, Shah Decl.

After its initial execution, the Contract was amended three times.  The first amendment is on CHF letterhead, listing CHF's address as 8601 Georgia Avenue, Suite 800, Silver Spring, MD

KLORES
PERRY
MITCHELLP.C.
1735 20TH STREET, N.W.
WASHINGTON, D.C. 20009
(202) 628-8100
FAX (202) 628-1240

WWW.KLORES.COM

---

[1] Page numbers used for this exhibit refer to those assigned by the ECF/PACER system.

[2] Per Unity's brief, Mubashar Hasan is the informal name of Syed Mubashar Hasan Shah.  Memo. at 4.

20910 USA. Memo, Ex. A, Shah Decl., Ex. 1, Contract at 20. It is signed on behalf of CHF by

its then-CEO, Michael E. Doyle, who is based in Maryland. Memo, Ex. A, Shah Decl., Ex. 1,

Contract at 20. While Ilyas Campbell contends that he signed the amendment on behalf of Unity

in Pakistan, he omits mentioning where Mr. Doyle signed it, leading to the reasonable conclusion

that he signed it in Maryland given the address on the letterhead. Memo, Ex. 2, Declaration of

Ilyas Campbell ("Campbell Decl.").

The second and third amendments to the Contract were signed by James E. Russo, the

then the Vice-president for Finance and IT Services for CHF, and by Mr. Doyle, respectively.

Memo, Ex. 1, Shah Decl., Ex. A, Contract at 22, 26. Both amendments note that the Contract is

administered by CHF, and list the same Silver Spring, Maryland address. Mr. Russo's signature

on the second amendment to the Contract is dated December 23, 2008, while the signatory for

Unity, which appears to be Mr. Shah, is dated December 24, 2008. Memo, Ex. 1, Shah Decl.,

Ex. A, Contract at 22. Similarly, the third amendment to the Contract, signed by Mr. Doyle, is

dated January 16, 2009, for CHF and signed by Mr. Hasan for Unity on January 17, 2009.

Memo, Ex. 1, Shah Decl., Ex. A, Contract at 26. The difference in signing dates presumably

results from a delay in transmitting the amendments from Maryland to Pakistan.

### ARGUMENT

#### I.     Standard of Review.

Under Fed. R. Civ. P. 4(k)(1)(A), "a federal court may exercise personal jurisdiction over

a defendant in the manner provided by state law." *Carefirst of Maryland, Inc. v. Carefirst*

*Pregnancy Centers, Inc.*, 334 F.3d 390, 396 (4th Cir. 2003). Two conditions must be satisfied

for a district court to exercise personal jurisdiction over a nonresident defendant: "(1) the

exercise of jurisdiction must be authorized under the state's long-arm statute; and (2) the exercise

KLORES
PERRY
MITCHELLP.C.
1735 20TH STREET, N.W.
WASHINGTON, D.C. 20009
(202) 628-8100
FAX (202) 628-1240

WWW.KLORES.COM

of jurisdiction must comport with the due process requirements of the Fourteenth Amendment." *Id.* (citing *Christian Sci. Bd. of Dirs. of the First Church of Christ v. Nolan*, 259 F.3d 209, 215 (4th Cir. 2001)). Maryland's long-arm statute "is coextensive with the limits of personal jurisdiction set by the due process clause of the Constitution." *Id.* (citing *Mohamed v. Michael*, 370 A.2d 551, 553 (Md. 1977)). Under that coextension, the statutory inquiry merges with the constitutional inquiry. *Id.* at 396-97.

A plaintiff must demonstrate the grounds for jurisdiction by a preponderance of the evidence. *Id.* at 396. All reasonable inferences arising from the plaintiff's proof, and all factual disputes, must be resolved in the plaintiff's favor. *Dring v. Sullivan*, 423 F. Supp. 2d 540, 543 (D. Md. 2006) (quoting *Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 59-60 (4th Cir. 1993)).

**II. Unity's Contacts With Maryland Are Sufficient to Establish Personal Jurisdiction Under the Long-Arm Statute.**

Maryland's long-arm statute allows the Court to exercise personal jurisdiction over a nonresident who directly or by agent "[t]ransacts any business or performs any character of work or service in the State." Md. Code, Cts. & Jud. Proc. § 6-103(b)(1). Where "jurisdiction over a person is based solely upon this section, he may be sued only on a cause of action arising from any act enumerated in this section." *Id.* at § 6-103(a). Subsection (b)(1), as limited by subsection (a), confers only "specific," rather than "general" jurisdiction. Specific personal jurisdiction exists where the evidence shows:

> (1) that the nonforum defendant purposely directed its activities toward residents of the forum state or purposely availed itself of the privilege of conducting activities therein; (2) that plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) that the forum's exercise of personal jurisdiction in the case is reasonable, i.e., is consistent with fair play and substantial justice.

*Hardnett v. Duquesne Univ.*, 897 F. Supp. 920, 923 (D. Md. 1995) (internal quotations omitted).

KLORES
PERRY
MITCHELL P.C.
1735 20TH STREET, N.W.
WASHINGTON, D.C. 20009
(202) 628-8100
FAX (202) 628-1240

WWW.KLORES.COM

### A. **Unity Has Purposefully Directed Its Activities Towards Maryland.**

Unity claims that because the contract was not executed in Maryland, and because currently there is no evidence that Unity's representatives ever traveled to Maryland in relation to the Contract, the Court cannot exercise personal jurisdiction. Maryland's long-arm statute provides otherwise: "A nonresident who has never entered the State . . . may be deemed to have 'transacted business' in the State within the meaning of subsection (b)(1) as long as his or her actions culminate in 'purposeful activity' within the State." *Jason Pharms., Inc. v. Jianas Bros. Packaging Co.*, 617 A.2d 1125, 1129 (Md. Ct. Spec. App. 1993) (quoting *Sleph v. Radtke*, 545 A.2d 111, 115 (Md. Ct. Spec. App. 1988)); *see also The Johns Hopkins Health Sys. Corp. v. Al Reem General Trading & Company's Rep. Est.*, 374 F. Supp. 2d 465, 472 (D. Md. 2002) ("[Subsection (b)(1)] does not require the defendant to have been physically present in Maryland.").

In *Jason Pharmaceuticals*, the Maryland Court of Specials Appeals found personal jurisdiction proper despite the fact that the defendant never entered Maryland. The issue there was a dispute over a "one-time" contract between a Maryland plaintiff and a Missouri defendant. 617 A.2d at 1126-27. Despite the defendant having never entered the state, the *Jason Pharmaceuticals* court determined the defendant's acts constituted "purposeful activity" toward Maryland, because:

> [The defendant] initiated the negotiations over the sale by calling [the plaintiff] . . . ; engaged in several weeks of negotiations with [the plaintiff], which was at all pertinent times located in Maryland; entered into a $700,000 contract, whether valid or invalid, with [the plaintiff] in Maryland; and sent a down payment of $35,000 into Maryland. We hold that this is sufficient evidence of purposeful activity to constitute transacting business within the meaning of § 6-103(b)(1).

*Id.* at 1129.

Using a similar analysis under similar conditions, this Court held personal jurisdiction

KLORES
PERRY
MITCHELL p.c.
1735 20ᵀᴴ STREET, N.W.
WASHINGTON, D.C. 20009
(202) 628-8100
FAX (202) 628-1240

WWW.KLORES.COM

existed in Maryland over a United Arab Emirates company on the basis of its contractual

relationship with a Maryland company. *See Johns Hopkins*, 374 F. Supp. 2d at 472 ("That Al

Reem is not registered to do business in Maryland and does not have an office here is immaterial.

Similarly, Al Reem's contention that most of the work it performed was in the U.A.E. is

unavailing."). That finding was based on the same factors as considered in *Jason*

*Pharmaceuticals*: that the defendant had initiated the negotiations, the extended negotiations

between the parties, the continued contractual relationship after the execution of the contract, and

the receipt of payments from the Maryland plaintiff. *Id.*

Likewise, Unity has engaged in the same kind of "purposeful activity" toward Maryland.

Unity's Memorandum and attached declarations state only that that Mr. Shah and Mr. Vance

executed the Contract in Peshawar, Pakistan; however, Maryland courts consider more than

merely the location of the execution in determining whether there "purposeful activity" was

directed at the forum state.[3]   Memo at 7; Memo, Ex. 1, Shah Decl.   While Plaintiffs have not

been provided the opportunity to conduct discovery, the Contract makes clear that both a

Maryland and a United States nexus is present.   For example, the Contract (1) indicates that it is

"issued by" CHF in Maryland, Memo, Ex. 1, Shah Decl., Ex. A, Contract at 5; (2) requires Unity

to coordinate with CHF's Senior Security Advisor, Bruce Parmalee, located in Silver Spring,

Maryland, *id.* at 24; (3) requires payment by CHF, whose office is in Maryland, *id.* at 10; (4)

states that it is governed by Maryland law, *id.* at 14; (5) was required to be executed in the



KLORES
PERRY
MITCHELL P.C.

1735 20ᵀᴴ STREET, N.W.
WASHINGTON, D.C. 20009
(202) 628-8100
FAX (202) 628-1240

WWW.KLORES.COM

---

[3]   Unity's contention that it can avoid Maryland's jurisdiction simply by physically signing its contracts elsewhere beggars the reality of our global economy and finds no support in law. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985) ("It is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted.  So long as a commercial actor's efforts are 'purposefully directed' toward residents of another State, we have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there."); *see also Message Sys. v. Integrated Broadband Svs., LLC*, 2010 U.S. Dist. LEXIS 72559 at *4, 18-19 (D. Md. July 19, 2010) (negotiating contract with Maryland company created sufficient jurisdictional contacts even though no contractual execution occurred in Maryland).

English language (not Urdu), *id.* at 14; and (6) requires that all disputes are to be resolved by the American Arbitration Association, not by a Pakistani group, *id.* at 14. Moreover, Unity represented in the Contract that it is allowed to conduct transactions with the United States Government, *id.* at 14, and Unity agreed to be bound by United States Executive Orders, *id.* at 15. There can be little question that Unity conducted "purposeful activity" in Maryland, and envisioned ongoing transactions with the forum state.

Given CHF's representations that its funding came from USAID, and that CHF is located in Silver Spring, Unity was obviously paid from Maryland. *See Johns Hopkins*, 374 F. Supp. 2d at 472; *see also Jason Pharms.*, 617 A.2d at 1129 (noting that defendants had "received payments for their services from Baltimore"). Unity's acceptance of these payments is further evidence it engaged in "purposeful activity" towards Maryland.

Similarly, although the original Contract purportedly was signed in Peshawar, Pakistan, at least three amendments to the Contract appear to have been signed by CHF in Maryland. These Maryland-based amendments further illustrate Unity's "purposeful activity" in this state. *Jason Pharms.*, 617 A.2d at 1128-29 finding (Maryland jurisdiction when plaintiff signed contract in Maryland and sent it back to Missouri).[4]

The Contract also memorializes Unity's continued interactions and contractual relationship with CHF in Maryland. The Contract notes that it was issued by CHF, at its Silver Spring, Maryland address. Memo, Ex. 1, Shah Decl., Ex. A, Contract at 5. Section C.2.B of the Contract, entitled "Headquarters Supervision and Monitoring," notes Mitchell Keiver at CHF's

KLORES
PERRY
MITCHELL P.C.
1735 20TH STREET, N.W.
WASHINGTON, D.C. 20009
(202) 628-8100
FAX (202) 628-1240

WWW.KLORES.COM

---

[4] It does not matter for minimum contact purposes whether the defendant initiated negotiations in the forum state, or later participated in them. The question is whether the net contacts were such that the defendant can reasonably be said to have purposefully conducted business in Maryland. *Compare Jason Pharms.*, 617 A.2d at 1129 (finding jurisdiction where defendant initiated and conducted negotiations in Maryland) and *Message Sys.*, 2010 U.S. Dist. LEXIS 72559 at *17-18 (finding jurisdiction where defendant initiated negotiations in Maryland, but conducted them in Georgia).

Silver Spring, Maryland address as the point of contact for all supervisory and monitoring matters. Memo, Ex. 1, Shah Decl., Ex. A, Contract at 11. Tellingly, the Contract contains a choice of law clause which states "[t]his Contract, its meaning and interpretations, and the relationship between the parties shall be governed by the applicable laws of *Maryland, USA.*" Memo, Ex. 1, Shah Decl., Ex. A, Contract at 14 (emphasis added).

Indeed, Unity's Maryland contacts are remarkably similar to those of the defendant in *Message Systems*, where this Court found purposeful activity sufficient to exercise personal jurisdiction. 2010 U.S. Dist. LEXIS 72559. There, even though all of the in-person contract negotiations occurred in Georgia, the defendant maintained no property or business in Maryland, did not regularly conduct business here, and the contract was not executed in Maryland, the defendant "purposefully conducted business activity in Maryland and availed itself of the protections of Maryland law when it reached out to a Maryland company and executed a contract that was to be governed by the laws of Maryland." *Id.* at 18-19 (citing *Burger King*, 471 U.S. at 479-82) (also noting defendant made contractual payments to Maryland). Having engaged in continuous discussions negotiating and implementing a contract with a Maryland company, receiving payment from Maryland, and having agreed to the protections of Maryland law, Unity can hardly be heard to assert it has not purposefully conducted business activity in this state.

**B. Plaintiffs' Claims Arise Out Of Unity's Contacts With Maryland.**

Unity next argues that Plaintiffs' tort claims do not arise from Unity's contractual contacts with Maryland. This myopic view of jurisdictional nexus comports with neither the law nor reality. A substantial nexus exists between Plaintiffs' tort claims and Unity's contractual contacts with Maryland, and the Plaintiffs' claims arise from those contacts.


KLORES
PERRY
MITCHELL p.c.
1735 20ᵀᴴ STREET, N.W.
WASHINGTON, D.C. 20009
(202) 628-8100
FAX (202) 628-1240

WWW.KLORES.COM

Maryland's long-arm statute requires that "[i]f jurisdiction over a person is based solely upon this section, he may be sued only on a cause of action arising from any act enumerated in this section." Md. Code, Cts. & Jud. Proc. § 6-103(a).  In practice, "[a defendant's] contacts with Maryland must provide 'the basis for the suit' against him." *Flo Pac, LLC v. Nutech, LLC*, 2009 U.S. Dist. LEXIS 91037, at *8 (D. Md. October 1, 2009) (quoting *Beyond Sys., Inc. v. Realtime Gaming Holding Co., LLC*, 878 A.2d 567, 580 (Md. 1995)).  The basis for suit—Unity's Contract—gave rise to its duty to provide security to Mr. Vance in Pakistan.

Unity relies on *Flo Pac* for its assertion that the Plaintiffs' claims do not arise out of the business it transacted in Maryland. *See* Memo at 9-10.  *Flo Pac*, however, is readily distinguishable from the circumstances presented here.  In *Flo Pac*, the plaintiff's claims for misappropriation of intellectual property by the managing member of the defendant in China were unrelated to the licensing contract between the plaintiff and the defendant. *Flo Pac* 2009 U.S. Dist. LEXIS at *9-10.  In the instant case—and unlike in *Flo Pac*—Plaintiffs' claims arise directly from the Contract, because the Contract created Unity's duty to provide protection to Mr. Vance.  The fact that Unity's contacts with Maryland were contractual in nature does not preclude their giving rise to specific jurisdiction over a tort claim. *See Hardnett*, 897 F. Supp. at 924 (observing that specific personal jurisdiction over tort claims can arise from contracts where the tort is factually related to the contract).  The pertinent question is how substantial the nexus between the contractual contacts and the tort is. *Id.* (citing *Presbyterian Univ. Hosp. v. Wilson*, 654 A.2d 1324, 1329 (Md. 1995)).  Rather than being tangentially related to the defendant's contacts with Maryland, as was the tort in *Flo Pac*, Unity's contacts constitute the first element of Plaintiffs' negligence claims: that Unity owed a duty to Mr. Vance.

Unity rests its contention that its contractual contacts cannot give rise to specific

KLORES
PERRY
MITCHELL p.c.
1735 20ᵀᴴ Street, N.W.
Washington, D.C. 20009
(202) 628-8100
Fax (202) 628-1240

www.Klores.com

jurisdiction on two "slip-and-fall" cases, one brought against a hotel based solely on the contractual contact when the room was booked in Maryland, and the other against a university, where the only contractual contact was during the school's admissions process. Memo at 10 (citing *Cox v. Ritz Carlton Hotel Co. of Mex. S.A. De C.V.*, 2006 WL 3313773 at *3 (D. Md. Nov. 9, 2006); and *Hardnett*, 897 F. Supp. at 924). In both cases, however, the Maryland contact was unrelated to the tortious violations asserted by their respective plaintiffs. Here, by contrast, the duty Unity owed to Mr. Vance arose from its contractual connection with Maryland, and Unity's negligent performance of that duty led to Mr. Vance's untimely death. Unlike in *Cox* and *Hardnett*, the nexus between the tortious conduct alleged against the defendant *arises out of* the defendant's contractual conduct in Maryland. Mr. Vance relied on Unity's contractual contacts with Maryland for his livelihood and safety in performing humanitarian aid work in Pakistan. Plaintiffs' claims against Unity would not exist but for the duty created by Unity's Maryland contract.

## C. The Exercise of Specific Jurisdiction Over Unity Meets The Threshold Demands Of Fairness.

Exercising personal jurisdiction over Unity also satisfies "'threshold demands of fairness.'" *Hardnett*, 897 F. Supp. at 923 (quoting *Presbyterian Univ. Hosp.*, 654 A.2d at 1330). Unity cannot claim that it could not foresee being haled into court in Maryland. Section E.2 of the Contract, "Law Governing Contract," states "[t]his Contract, its meaning and interpretation, and the relationship between the parties shall be governed by the applicable laws of *Maryland, USA*." Memo, Ex. 1, Shah Decl., Ex. A, Contract at 14 (emphasis added). Where such a choice of law provision exists, "'the inequity of being haled into a foreign forum is mitigated.'" *Message Sys.*, 2010 U.S. Dist. LEXIS 72559 at *20-21 (quoting *CFA Inst. v. Inst. of Chartered Fin. Analysts of India*, 551 F.3d 285, 296 (4th Cir. 2009)). That Unity has consented to

KLORES
PERRY
MITCHELL p.c.
1735 20TH STREET, N.W.
WASHINGTON, D.C. 20009
(202) 628-8100
FAX (202) 628-1240

WWW.KLORES.COM

Maryland law governing the Contract satisfies the "fairness" question.

Notwithstanding its self-described international status, Unity regularly does business in the United States. Unity lists its sole point of contact in the "Americas" as an office located in Washington, D.C., and its Managing Director for the Americas, Jim LeBlanc, as being based out of that office. *See* Exhibit 1, Business Card of Jim LeBlanc. Mr. LeBlanc's primary role as Managing Director for the Americas is to solicit business from American Non-Governmental Organizations ("NGOs"), like CHF, and other potential clients with security needs, and to perform administrative functions for Unity. Mr. LeBlanc regularly meets with individual American businesses and hosts gatherings of NGO decision makers, including heads of security, in attempts to persuade them to employ Unity for their security and organizational needs.

Additionally, Mr. LeBlanc is on the Board of Directors for the Northern Virginia Technology Council ("NVTC"). Unity is listed as part of NVTC's Global Resource Map under Middle East. According to the NVTC, the goals of the map are "to facilitate international strategic business partnerships and educate companies about business in the global economy." The Global Resource Map was created by the NVTC International Committee, which had Jim LeBlanc as its founding chairman, and who currently serves as the NVTC Board's liaison to the Committee. *See* Your Competition is Global Shouldn't you be? NVTC Launches Unique Web-based Resource: The NVTC Global Resource Map, http://www.nvtc.org/community/intl.php. The actions by Unity and its agent, Mr. Leblanc, make clear that Unity regularly conducts business in the United States, has an established presence here in hopes of obtaining additional clients, and uses Mr. LeBlanc and the office in Washington, D.C., as its primary point of contact in the United States.

Considering Unity's substantial contacts with the United States, and Maryland in

KLORES
PERRY
MITCHELL p.c.
1735 20TH STREET, N.W.
WASHINGTON, D.C. 20009
(202) 628-8100
FAX (202) 628-1240

WWW.KLORES.COM

particular, the inconvenience to Unity having to litigate in Maryland would be minimal compared to the inconvenience and prejudice the Plaintiffs would face litigating in Pakistan. Even if the Court deemed Pakistan an adequate forum, it is unlikely that any physical evidence remains in Pakistan that would militate toward exercising jurisdiction there.  Nor are there many witnesses who would be greatly inconvenienced were Maryland to exercise jurisdiction; the inconvenience potentially faced by Unity's employees is minimal compared to the inconvenience and prejudice the Plaintiffs would face being forced to litigate their claims in Pakistan.

Moreover, "fairness" applies to both parties.  Specifically, if this Court declines jurisdiction, in all likelihood Plaintiffs will be left without a remedy against Unity.  It would be manifestly unfair—and devastating to public policy and humanitarian missions abroad—for Americans to surrender their statutory rights as a prerequisite to working for United States companies abroad, especially when the humanitarian work is being performed in countries lacking adequate judicial systems.

The fairness of conducting suit in this forum instead of Pakistan is also informed by the doctrine of international comity: "The comity doctrine only suggests recognition of a foreign proceeding if it is determined to be orderly, fair and not detrimental to the nation's interests." *Johns Hopkins*, 374 F. Supp. 2d at 473.[5]  "In cases where there are concurrent federal and foreign proceedings," a court should consider "the source of governing law; and . . . whether foreign proceedings are adequate to protect the parties' rights." *Id.* (citing *Gannett Co., Inc. v. Clark Constr. Grp., Inc.*, 286 F.3d 737, 741 (4th Cir. 2002)).  In most cases, the U.S. court should choose to exercise jurisdiction. *Id.* (quoting *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983)).

KLORES
PERRY
MITCHELL p.c.
1735 20TH STREET, N.W.
WASHINGTON, D.C. 20009
(202) 628-8100
FAX (202) 628-1240

WWW.KLORES.COM

---

[5] In *Johns Hopkins*, parallel proceedings for the contractual dispute transpired in both Maryland and the United Arab Emirates. *Johns Hopkins*, 374 F. Supp. 2d at 473.

12

In this case, the same factors favoring the exercise of jurisdiction under the doctrine of international comity also favor the exercise of personal jurisdiction and shed light on the "traditional notions of fair play and substantial justice." If Unity's Motion is successful, the Plaintiffs essentially have no alternative forum. In *Johns Hopkins*, this Court noted that it was "not convinced that the U.A.E. proceedings [were] adequate to protect the parties' rights." *Id.* at 475. Comparatively, Pakistan's rampant terrorism, corruption, and instability make it even less likely than the United Arab Emirates to be able to protect the Plaintiffs' rights. Given that it regularly solicits and does business in the United States for precisely the services it contracted to do here, and maintains an office in Washington, D.C., Unity can point to no inconvenience or unfairness occasioned by being haled into this Court.

## CONCLUSION

By contracting with CHF to provide Mr. Vance's security, Unity purposefully conducted business in Maryland, and availed itself of this Court's jurisdiction. Indeed, having agreed to have its actions under that contract be governed by Maryland law, it defies reason for it to assert any unfairness in litigating here. Neither fair play nor substantial justice is offended by Unity's presence in this Court, and, for the foregoing reasons, its Motion to Dismiss should be denied.

DATED: March 26, 2012          Respectfully submitted,

KLORES PERRY MITCHELL, P.C.

By:___/s/_____
     Scott M. Perry (#14763)
     1735 20th Street, N. W.
     Washington, DC 20009
     T: (202) 628-8100
     F: (202) 628-1240
     smp@klores.com

KLORES
PERRY
MITCHELLP.C.
1735 20TH STREET, N.W.
WASHINGTON, D.C. 20009
(202) 628-8100
FAX (202) 628-1240

WWW.KLORES.COM

THE LEWIS FIRM PLLC
Michael Lewis (#18325)
Trey Mayfield (seeking *pro hac vice admission*)
1225 15th Street NW
Washington, DC  20005
T: (202) 630-6257
F: (888) 430-6695
mlewis@lewis-firm.com
*Counsel for Plaintiffs*



**KLORES**
**PERRY**
**MITCHELL** P.C.

1735 20TH STREET, N.W.
WASHINGTON, D.C. 20009
(202) 628-8100
FAX (202) 628-1240

WWW.KLORES.COM

## CERTIFICATE OF SERVICE

I hereby certify that on this 26th day of March, 2012, I served a true and accurate copy of the foregoing, Plaintiff's Response to Defendant CHF's Motion to Dismiss, via the Courts Electronic Filing system, to:

Tara M. Lee, Esquire
Joseph C. Davis, Esquire
DLA Piper, LLP
11911 Freedom Drive, Suite 300
Reston, VA 20190

Linda S. Woolf
Christopher M. Corchiarino
Goodell, DeVries, Leech & Dann, LLP
One South Street, 20th Floor
Baltimore, Maryland 21202

Kevin J. Walsh
Locke Lord LLP
Three World Financial Center
New York, New York 10281



/s/
Scott M. Perry



KLORES
PERRY
MITCHELL p.c.

1735 20TH STREET, N.W.
WASHINGTON, D.C. 20009
(202) 628-8100
FAX (202) 628-1240

WWW.KLORES.COM